IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,648






IN RE STATE EX REL. GARY D. YOUNG, COUNTY AND DISTRICT


ATTORNEY OF LAMAR COUNTY, TEXAS, Relator


V.


THE SIXTH JUDICIAL DISTRICT COURT OF APPEALS

AT TEXARKANA, Respondent





ON PETITION FOR A WRIT OF MANDAMUS


IN CAUSE NO. 06-06-00102-CV FROM THE


SIXTH COURT OF APPEALS AT TEXARKANA





 Price, J., delivered the opinion for a unanimous Court


O P I N I O N



 This case involves a petition for writ of mandamus, filed by the County Attorney of
Lamar County, Gary D. Young (relator). Young seeks relief from an order entered by the Sixth
Court of Appeals in Texarkana (respondent), in response to an application for writ of
mandamus that was filed by Leslie Gene Goodman (the real party in interest). We will
conditionally grant mandamus relief.

FACTS AND PROCEDURAL POSTURE

 In 2000, prior to his election as County Attorney of Lamar County, Young was in
private practice. In that capacity he defended Goodman in a prosecution for driving while
intoxicated, in cause number 18802, in Lamar County. In the course of that representation,
Goodman told Young "how many beers I drink a day[.]" Goodman was convicted of DWI on
September 12, 2000.

 After he was elected, Young obtained a subsequent indictment against Goodman,
charging him with felony DWI, allegedly committed on February 1, 2006. (1) One of the two
prior DWI convictions that were alleged for purposes of elevating this most recent DWI to
felony status was the September 2000 conviction in which Young had represented Goodman. 
Goodman filed a pre-trial motion in which he asked the trial court to order Young to disqualify
himself from prosecuting Goodman on the grounds that they had previously shared an attorney-client relationship. The trial court conducted a brief hearing on the motion on September 19,
2006. Young testified at the hearing that he neither sought nor obtained Goodman's
permission to prosecute him. He took the position that the fact of Goodman's prior conviction
for DWI in cause number 18802 was a matter of public record which he could easily prove up
without resort to any confidential communications or any information he might have obtained
as a product of his representation of Goodman. "As far as the facts of the case," he assured the
trial court, "none of that is going to be used." The trial court denied Goodman's motion.

 Goodman filed an application for writ of mandamus in the Sixth Court of Appeals. In
that application, he sought to have the court of appeals order the trial court to issue an order
disqualifying Young from prosecuting him. The court of appeals obliged Goodman and ordered
mandamus relief. (2) The court of appeals acknowledged that a trial court only has authority to
order a prosecutor to disqualify himself based upon a conflict of interest so substantial as to
"rise[ ] to the level of a due-process violation." (3) "A defendant's due process rights are violated
when an attorney represents a client and then participates in the prosecution of that client in
the same matter or another matter with a substantial relationship to the first." (4) The court of
appeals concluded that, on the facts presented, the trial court could only have concluded that
Goodman's due-process rights were violated. Though Young did not propose to represent the
State in the same matter as he had previously represented Goodman, he did propose to
represent the State in another matter with a substantial relationship to the first. Moreover, the
court of appeals found this violation of due process to be so "inescapable" as to warrant
mandamus relief. (5)

 Young has now sought mandamus relief from this Court from the judgment of the court
of appeals. (6) We filed and set his application to consider whether the court of appeals clearly
abused its discretion in finding that a violation of due process was so apparent on the record
that the trial court had no discretion but to disqualify Young. We hold that the court of appeals
did clearly abuse its discretion for reasons that follow.

MANDAMUS STANDARD

 The traditional test for determining whether mandamus relief is appropriate requires
the relator to establish two things. First, he must show that he has no adequate remedy at law
to redress his alleged harm. Second, he must show that what he seeks to compel is a
ministerial act, not involving a discretionary or judicial decision. (7) If the relator fails to satisfy
either aspect of this two-part test, then relief should be denied. As to the latter requirement,
we have said that it is satisfied if the relator can show he has "a clear right to the relief
sought"-that is to say, "when the facts and circumstances dictate but one rational decision"
under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law
sources), and clearly controlling legal principles. (8)

 While a trial court has a ministerial duty to rule upon a motion that is properly and
timely presented to it for a ruling, in general it has no ministerial duty to "rule a certain way
on that motion." (9) By this we mean that mandamus will not lie to "compel the trial court 'to rule
a certain way' on an uncertain and unsettled issue the resolution of which involved a fair
amount of discretion." (10) In short, it is improper to order a trial court to exercise its judicial
(as opposed to its ministerial) function in a particular way unless the relator has a "clear right
to the relief sought," i.e., the law he invokes is definite, unambiguous, and unquestionably
applies to the indisputable facts of the case. 

 When a relator asks this Court to issue a writ of mandamus to order a lower appellate
court to rescind a mandamus order of its own, we measure the lower appellate court's exercise
of its own mandamus authority under a "clear abuse of discretion" standard. (11) In practice,
however, we pay no particular deference to the court of appeals's judgment with respect to
whether the relator has established the requisites for mandamus relief. "It is settled that a
court of appeals clearly abuses its discretion when it grants a writ of mandamus absent a proper
basis." (12) Thus, we determine whether the court of appeals abused its discretion essentially by
undertaking a "de novo application of the two pronged test applied below by the court of
appeals." (13)

 There has been some controversy in recent years whether the "clear right to relief"
articulation of the ministerial act requirement for mandamus relief has resulted in an unduly
liberalized exercise of mandamus authority. (14) We need not address that controversy here,
however. We hold that, even under the clear right to relief standard, the court of appeals
clearly abused its discretion to grant mandamus relief.

NO CLEAR RIGHT TO RELIEF

 The court of appeals began with the proposition that Goodman was entitled to relief
only if he could demonstrate that Young's participation in the prosecution against him,
however ill-advised from an ethical standpoint, amounted to a violation of due process. (15) As
the court of appeals noted in the course of its lengthy analysis, (16) this Court has held that it
constitutes a manifest violation of due process for an attorney to represent the State against
a client whom he has represented as a private practitioner in the past in the same case. (17) But
Goodman did not argue, and the court of appeals did not hold, that because Young represented
him in one of the DWI cases presently alleged to enhance the current DWI to felony status,
Young thereby represented him in the same case. Nor do we think it reasonably could be
argued that the facts here demonstrate that Young represented Goodman in the same case. (18) 
It cannot be said, therefore, that our case-law precedents firmly and unequivocally mandate that
the trial court disqualify Young. Goodman has no "clear right to relief" on that account.

 Nevertheless, the court of appeals granted mandamus relief. The court of appeals was
unable to identify any definitive, well-settled, and unequivocal legal authority from this Court
that indisputably governs the instant factual scenario. Instead, the court of appeals essentially
adopted a rule that it found on the civil side of the docket. Under this rule, a prosecutor
violates the due-process rights of his former client, at least under some circumstances, if he
represents the State against that client having previously represented him in a matter that was
"substantially related" to the present prosecution. The court of appeals announced the
following legal proposition it believed should have governed the trial court's ruling, concluding
that the trial court "erred" (19) in failing to apply it:

 [A] disqualification should occur only when (1) the underlying proceeding [i.e.,
the case prosecutor is currently prosecuting against his former client] is so
substantially related to real and actual disclosures (as opposed to theoretical
discussions) that occurred during the previous attorney-client relationship, and
(2) there exists a genuine threat that disclosure of these confidential
communications will either materially advance the State's case or drastically
undermine the accused's ability to mount a defense-such that this advancement
or undermining rises to the level of a due-process violation. (20)


In what is a lengthy and thoughtful opinion, the court of appeals gleaned this rule from a
number of somewhat disparate, (21) and precatory, (22) authorities. But, while it may well ultimately
prove the appropriate rule of law in criminal cases, it is not the only rational alternative, (23) and
it is certainly not, as the court of appeals characterized it, "inescapable." (24) For example, it
is not readily apparent why the question presented in Goodman's mandamus proceeding should
be governed by a United States Supreme Court opinion that addresses an issue of procedural
due process in an administrative-law context. (25) Moreover, the court of appeals relied heavily
upon a Texas Supreme Court case, In re Epic Holdings, Inc. (26) In Epic Holdings, the trial court
was found to have clearly abused its discretion in failing to disqualify a civil law firm which
had undertaken legal work for a defendant in the past that was "substantially related" to the
claims of its present client, the plaintiff. Acknowledging that the Texas Disciplinary Rules of
Professional Conduct are merely "guidelines" that "do not determine whether counsel is
disqualified in litigation," the Texas Supreme Court nevertheless relied upon them to hold that
the trial court clearly abused its discretion. (27) But there is no requirement in the civil context
that the failure to disqualify counsel must rise to the level of a due-process violation, as at
least a plurality of judges of this Court has held there to be when a criminal defendant attempts
to disqualify an elected district attorney. (28) Indeed, a plurality of this Court has gone so far as
to hold that a trial court "is without legal authority" to disqualify an elected district attorney
on the basis of a violation of the disciplinary rules alone. (29)

 For these reasons we cannot say that the rule announced by the court of appeals is of
such indubitable provenance that the trial court in this case had a ministerial duty to apply it to
the facts of this case to reach a particular result in the exercise of what would otherwise
constitute a manifestly judicial function. Even if the trial court "erred" in the exercise of its
discretion in carrying out that judicial function, that does not, by itself, justify mandamus
relief.

CONCLUSION

 We hold that the court of appeals clearly abused its discretion to order the trial court
to disqualify Young. We will withhold issuance of the writ, as is our custom, to allow the court
of appeals to rescind its mandamus order.


Delivered: September 26, 2007 

Publish
1. See Tex. Penal Code §§ 49.04 & 49.09.
2. In re Goodman, 210 S.W.3d 805 (Tex. App.--Texarkana 2006).
3. Id. at 808 (citing State ex rel. Hill v. Pirtle, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994)
(plurality opinion)).
4. Id. (quoting Edward L. Wilkinson, Conflicts of Interest in Texas Criminal Cases, 54 Baylor
L.Rev. 171, 176-77 (2002)).
5. In re Goodman, supra, at 814, 816. 
6. This Court lacks jurisdiction to consider the decisions of the courts of appeals in the exercise of
their original jurisdiction, at least under our appellate authority via petitions for discretionary review. 
Jacolos v. State, 692 S.W.2d 724 (Tex. Crim. App. 1985). However, we can exercise our own original
jurisdiction in a separate mandamus proceeding to determine whether a court of appeals has "clearly
abused its discretion" in granting mandamus relief. Dickens v. Second Court of Appeals, 727 S.W.2d
542, 549-50 (Tex. Crim. App. 1987).
7. E.g., De Leon v. Aguilar, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004).
8. Buntion v. Harmon, 827 S.W.2d 945, 947, 948 n.2 (Tex. Crim. App. 1992). Stated another
way, an act may be regarded as "ministerial" when the facts are undisputed and, given those undisputed
facts, "the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the
exercise of discretion or judgment." State ex rel. Healey v. McMeans, 884 S.W.2d 772, 774 (Tex. Crim.
App. 1994) (quoting Texas Dept. of Corrections v. Dalehite, 623 S.W.2d 420, 424 (Tex. Crim. App.
1981)).
9. State ex rel. Curry v. Gray, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).
10. State ex rel. Rosenthal v. Poe, 98 S.W.3d 194, 199 n.3 (Tex. Crim. App. 2003).
11. Dickens v. Second Court of Appeals, supra; Hill v. Fifth Court of Appeals, 34 S.W.3d 924,
926 (Tex. Crim. App. 2001); Hill v. Fifth Court of Appeals, 67 S.W.3d 177, 180 (Tex. Crim. App.
2001); Banales v. Thirteenth Court of Appeals, 93 S.W.3d 33 (Tex. Crim. App. 2002).
12. Lanford v. Fourteenth Court of Appeals, 847 S.W.2d 581, 586 (Tex. Crim. App. 1993).
13. George E. Dix & Robert O. Dawson, 43B Texas Practice: Criminal Practice and
Procedure §§ 46.85, at 190 (2d ed. 2001)
.
14. Dix & Dawson, supra, §§ 46.51 & 46.54. See, e.g., Healey v. McMeans, supra, at 776-80
(Meyers, J., dissenting); id. at 780-82 (Baird, J., concurring in denial of motion for rehearing); Hill v.
Pirtle, supra, at 933-35 (Meyers, J., concurring); id. at 937-8 (Baird, J., dissenting); Hill v. Fifth Court
of Appeals, supra, 34 S.W.3d at 928 n.5; Rosenthal v. Poe, supra, at 198-99 n. 3. 
15. Even this premise is not without controversy. In State ex rel. Eidson v. Edwards, 793 S.W.2d
1, 4-7 (Tex. Crim. App. 1990), a plurality of this Court seemingly held that a trial court was without
authority to order an elected district or county attorney to disqualify himself, and that the only remedy for
a defendant whose due-process rights are compromised is a "reversal on appeal." However, in a later
plurality opinion, Judge White, who also authored the plurality opinion in Eidson, construed his earlier
holding to be that "[a] trial court may not disqualify a district attorney or his staff on the basis of conflict of
interest that does not rise to the level of a due process violation." Hill v. Pirtle, supra, at 927 (plurality
opinion). For purposes of this opinion, we will assume, without deciding, that a trial court has authority to
disqualify an elected district or county attorney if his continued representation of the State would violate
the defendant's due-process rights. 
16. In re Goodman, supra, at 811.
17. Ex parte Morgan, 616 S.W.2d 625, 626 (Tex. Crim. App. 1981); Ex parte Spain, 589 S.W.2d
132, 134 (Tex. Crim. App. 1979).
18. In Morgan and Spain, both supra, we held that probation-revocation proceedings constituted the
same cases as the underlying prosecutions that resulted in the probations in the first place. We do not
believe that a prosecution can reasonably be construed to be the same as a later prosecution, even if the
earlier prosecution results in a conviction that is alleged in the latter prosecution to be one of the
jurisdictional facts elevating the latter prosecution to felony status. In any event, we have never held them
to be the "same" case in any previous decision.
19. In re Goodman, supra, at 814.
20. Id., supra, at 815-16.
21. The launching point of the court of appeals's analysis was a three-part test that the United States
Supreme Court applied in the context of deciding what process was due before the federal government
could discontinue certain social-security disability benefits. Mathews v. Eldridge, 424 U.S. 319, 335
(1976). See Goodman, 210 S.W.3d at 810. From there, the court of appeals examined Rules 1.05(b)
and 1.09(a) of the Texas Disciplinary Rules of Professional Conduct and opinions of the Texas Supreme
Court and the Texas Commission on Professional Ethics construing those rules. Id. at 810-13. Applying
what it gleaned from these various sources to the three-part test from Mathews v. Eldridge, the court of
appeals concluded that a rule requiring disqualification under the circumstances of this case was necessary
to avoid violating Goodman's right to due process. Id. at 814 ("Thus, on balance, the factors enunciated
by the Supreme Court tip the scales of justice in Goodman's favor on the issue of whether the trial court's
failure to disqualify Young rises to the level of a due-process violation.") The court of appeals could point
to no case in which these disparate authorities have been previously combined to form binding authority
in support of its rule that a violation of the applicable rules of professional conduct rise to the level of a due-process violation if they "genuinely threaten" the fairness of the proceeding.
22. The court of appeals itself recognized that rules governing attorney ethics and discipline serve as
"guidelines" to courts in determining legal questions and that "opinions of the Texas Ethics Commission are
advisory, rather than binding, authority[.]" See Goodman, 210 S.W.3d at 809-10, 812, and cases cited
therein. See also In re Nitla S.A. De C.V., 92 S.W.3d 419, 422 (Tex. 2002) ("[T]he disciplinary rules
are merely guidelines-not controlling standards-for disqualification motions.").
23. We have held in the context of a violation of another disciplinary rule, for example, that before he
can demonstrate a violation of due process, a defendant must establish "actual prejudice," not just the
threat, however, genuine (as the court of appeals fashioned its rule here), of prejudice. See House v. State,
947 S.W.2d 251, 253 (Tex. Crim. App. 1997) ("[I]f a defendant cannot show actual prejudice from an
alleged disciplinary rule violation by the State, then he will not be entitled to relief . . . .")'; cf. Gonzalez
v. State, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) ("Allegations of one or more violations of the
disciplinary rules or evidence showing only a possible future violation are not sufficient" to justify attorney
disqualification). Moreover, even on the civil side, "[p]erhaps an unsettled question regarding
disqualification pursuant to Rule 1.09 . . . is whether the movant must additionally prove actual prejudice
resulting from the presumed imparted confidences." Rebecca Simmons & Manuel C. Maltos, The Fifth
Annual Symposium on Legal Malpractice and Professional Responsibility: Article: Exploring
Disqualification of Counsel in Texas: A Balancing of Competing Interests, 37 St. Mary's L. J. 1009,
1034 (2006).
24. In re Goodman, supra, at 814, 816.
25. Id. at 810, citing Mathews v. Eldridge, supra.
26. 985 S.W.2d 41 (Tex. 1998).
27. Id. at 48, 54. See also NCNB Texas Nat. Bank v. Coker, 765 S.W.2d 398, 400 (Tex. 1989); 
In re Basco, 221 S.W.3d 637, 638 (Tex. 2007).
28. Hill v. Pirtle, supra, at 927.
29. Eidson v. Edwards, supra, at 6-7 (plurality opinion).